# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ZINA D. HUNTER**
2456 Elvans Road, S.E.
Washington, DC  20020,

                **Plaintiff,**

**v.**

**DISTRICT OF COLUMBIA**
1350 Pennsylvania Avenue, N.W.
Washington, DC  20004,

                **Defendant.**

**Civil Action No. 1:08-cv-256-RBW**
**Judge: Reggie B. Walton**

### PLAINTIFF ZINA D. HUNTER'S MEMORANDUM IN OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS

**WHITE & CASE LLP**
Dana E. Foster (D.C. Bar No. 489007)
Christopher Macchiaroli (D.C. Bar No. 491825)
701 Thirteenth Street, N.W.
Washington, D.C.  20005-3807
Tel: (202) 626-3600
Fax: (202) 639 9355

*Counsel for Plaintiff Zina D. Hunter*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF FACTS ................................................................ 1

STANDARD OF REVIEW ................................................................ 3

ARGUMENT ................................................................ 5

I.    THE DISTRICT HAS ABANDONED ITS EXHAUSTION OF ADMINISTRATIVE REMEDIES ARGUMENT……………………………………………5

II.   THE DISTRICT'S MOTION TO DISMISS SHOULD BE DENIED ................................ 6

    A.    D.C. Code § 12-309 Was Never Intended To Apply To DCHRA Claims ................................................................ 7

    B.    D.C. Code § 12-309 Only Applies To Claims For Unliquidated Damages ................................................................ 10

    C.    The District Had Actual Notice Of Hunter's Discrimination Claims .......... 11

        1.    OHR's Charge Questionnaire Provided The District Detailed Notice Regarding Hunter's DCHRA Claims…………………………15

        2.    OHR's Charges of Discrimination Are Akin To Police Reports…...15

        3.    OHR's Investigation Provided Notice To The Mayor……………...17

    D.    The District Has Waived Its Failure To Provide Notice Argument By Litigating Hunter's Claims For Nearly Four Years ................................ 19

CONCLUSION ................................................................ 20

# TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGE**

*Allen v. District of Columbia*,
  533 A.2d 1259 (D.C. 1987) ...............................................................................................16

*Americable Int'l v. Dep't of the Navy*,
  129 F.3d 1271 (D.C. Cir. 1997) ...........................................................................................4

*Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*,
  377 F.3d 682 (7th Cir. 2004) ...........................................................................................18

*Beeton v. District of Columbia*,
  779 A.2d 918 (D.C. 2001) ...............................................................................................11

*Bowie v. Gonzalez*,
  433 F. Supp. 2d 24 (D.D.C. 2006) .............................................................................5-6, 17

*Breen v. District of Columbia*,
  400 A.2d 1058 (D.C. 1979) ...............................................................................................7

*Brown v. United States*,
  742 F.2d 1498 (D.C. Cir. 1984) .....................................................................................8, 19

*Bynum v. Equitable Mortgage Group*,
  No. 99-CV-2266-SBC-JMF, 2005 WL 818619 (D.D.C. Apr. 7, 2005) ...............................4, 18

*Byrd v. District of Columbia*,
  No. 06-00522 (HHK), 2008 WL 678592 (D.D.C. Mar. 13, 2008) .......................................9, 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .........................................................................................................4

*Chisholm v. District of Columbia*,
  533 F. Supp. 2d 175 (D.D.C. 2008) ..................................................................................10

*District of Columbia v. Campbell*,
  580 A.2d 1295 (D.C. 1990) .............................................................................................8, 9

*District of Columbia v. Dunmore*,
  662 A.2d 1356 (D.C. 1995) .............................................................................................7, 9

*District of Columbia v. Leys*,
  63 F.2d 646 (D.C. 1932) .................................................................................................7, 8

---
* Denotes cases on which counsel chiefly relies.

*Dixon v. District of Columbia,*
   168 A.2d 905 (D.C. 1961) ...................................................................12

*Doe by Fein v. District of Columbia,*
   697 A.2d 23 (D.C. 1997) ....................................................................10

*First Chicago Int'l v. United Exch. Co.,*
   836 F.2d 1375 (D.C. Cir. 1988)...........................................................5

*Foster v. Gonzales,*
   516 F. Supp. 2d 17 (D.D.C. 2007) .......................................................13

*F.W. Woolworth Co. v. Stoddard,*
   156 A.2d 229 (D.C. 1959) ...................................................................19

*Goodman v. Praxair,*
   494 F.3d 458 (4th Cir. 2007) ...............................................................18

*Hardy v. District of Columbia,*
   616 A.2d 338 (D.C. 1992) .....................................................................7

*Hirshfeld v. District of Columbia,*
   254 F.2d 774 (D.C. Cir. 1958) ......................................................14, 15

*Holman v. Williams,*
   436 F. Supp. 2d 68 (D.D.C. 2006) .......................................................18

*Hurd v. District of Columbia,*
   106 A.2d 702 (D.C. 1954) .......................................................11, 12, 15

*Kriesch v. Johanns,*
   468 F. Supp. 2d 183 (D.D.C. 2007) .......................................................4

*Lively v. Cullinane,*
   451 F. Supp. 999 (D.D.C. 1976) .........................................................10

*Mazloum v. District of Columbia,*
   522 F. Supp. 2d 24 (D.D.C. 2007) ..................................................15, 16

*Pinkney v. District of Columbia,*
   439 F. Supp. 519 (D.D.C. 1977) ................................................. *passim*

*Pitts v. District of Columbia,*
   391 A.2d 803 (D.C. 1978) .......................................................11, 12, 16

*Rahman v. Johanns,*
   501 F. Supp. 2d 8 (D.D.C. 2007) ...........................................................3

*Rieser v. District of Columbia*,
  563 F.2d 462 (D.C. Cir. 1977) ..................................................................................14, 15

*Sanders v. District of Columbia*,
  No. Civ.A. 97-2938 (PLF), 2002 WL 648965 (D.D.C. Apr. 15, 2002) ................................19, 20

*Shane v. United States*,
  No. 07-577 (RBW), 2008 WL 101739 (D.D.C. Jan. 9, 2008)..................................................4

*Shaw v. District of Columbia*,
  No. 05-1284 (CKK), 2006 WL 1274765 (D.D.C. May 8, 2006)....................................11, 12, 15

*Smith v. District of Columbia*,
  413 F.3d 86 (D.C. Cir. 2005) ...................................................................................1

*Smith v. District of Columbia*,
  463 F.2d 962 (D.C. Cir. 1972) ...................................................................................14

*Smith v. United States*,
  518 F. Supp. 2d 139 (D.D.C. 2007) ...........................................................................4

*Sperling ex rel. Estate of Oxlaj-Gonzales v. Washington Metro. Area Transit Auth.*,
  ----F. Supp. 2d----, No. 07-557, 2008 WL 921853 (D.D.C. April 8, 2008) ..................... *passim*

*Wharton v. District of Columbia*,
  666 A.2d 1227 (D.C. 1995) .....................................................................................12

## **STATUTES**

47 DCR 9533 (2000)...............................................................................................17

51 DCR 1455 (2004)...............................................................................................17

D.C. Code § 12-309 ....................................................................................... *passim*

D.C. Code §§ 2-1411.01, *et seq.* (2001) ..................................................................17

*District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01, *et seq.* (2001) ............ *passim*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (2007) ............................3, 5

*H.R. Rep No. 2010, 72d Cong., 2d Sess. 1 (1933) ................................................................7, 11

Prevention of Child Abuse and Neglect Act, D.C. Code §§ 6-2101, *et seq.* (2001).....................10

## **OTHER AUTHORITIES**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1276
    (3d ed. 2004, supp. 2008) ...........................................................................................18

Fed. R. Civ. P. 5 .............................................................................................................3

Fed. R. Civ. P. 6(e) ........................................................................................................3

Fed. R. Civ. P. 12(b)(6)..................................................................................................4

Fed. R. Civ. P. 56..........................................................................................................18

Local Rule 7(b) ...............................................................................................................3

On January 29, 2008, the D.C. Office of Human Rights issued a letter of determination finding probable cause that Plaintiff Zina D. Hunter — while employed by the D.C. Department of Youth Rehabilitation Services — was subjected to hostile work environment sexual harassment and was the victim of retaliation. After a nearly four-year investigation, OHR found that DYRS's Oak Hill Youth Center — a facility the U.S. Court of Appeals for the D.C. Circuit characterized as having a "history of problems so serious that even the District has called it a 'troubled program'"[1] — had neither a sexual harassment policy nor a mechanism for reporting sexual harassment. Notwithstanding its opposition to Hunter's allegations during the OHR investigation, which included the submission of briefs, documents, and affidavits, the District of Columbia now argues that Hunter's DCHRA claims should be dismissed because the Mayor never received a letter from Hunter pursuant to D.C. Code § 12-309. That argument should be rejected for several reasons. *First*, section 12-309 was never intended to apply to DCHRA claims. *Second*, the notice requirements are only applicable to claims for unliquidated damages. *Third*, even if D.C. Code § 12-309 applies to Hunter's DCHRA claims, she complied with the statute by providing the District with actual notice. *Fourth*, at this stage of the proceeding, the District's affidavit is ill-considered and insufficient to warrant dismissal. *Finally*, the District has waived its right to notice by litigating these claims for nearly four years without asserting this affirmative defense.

## STATEMENT OF FACTS

From February 2003 through September 2005, the D.C. Department of Youth Rehabilitation Services ("DYRS") employed Plaintiff Zina D. Hunter ("Plaintiff" or "Hunter") as a Supervisory Correctional Officer both at the Oak Hill Youth Center ("Oak Hill") and the Superior Court At Risk Unit (the "At Risk Unit"). *See* Compl. ¶ 11 (D.E. 1). Prior to February

---

[1] *See Smith v. District of Columbia*, 413 F.3d 86, 89 (D.C. Cir. 2005) (citation omitted).

2003, Hunter had at least eighteen years of time-in-service with the District of Columbia government.  *Id*. ¶ 12.  While employed at Oak Hill, Hunter received one written evaluation — a rating of "Excellent."  *Id*. ¶ 13.

During Hunter's entire tenure with DYRS, sexual harassment was pervasive and shocking to all ordinary notions of acceptable workplace conduct.  Compl. ¶ 39.  While employed at Oak Hill, Hunter had her waist, backside, and breasts grabbed, and was regularly propositioned for sex.  *Id*. ¶¶ 18, 27.

Despite Hunter's repeated complaints, her supervisors neither investigated her charges nor reprimanded the harassing employees, even after witnessing the inappropriate conduct themselves.  Compl. ¶ 22.  When Hunter informed her immediate supervisor that she intended to file a charge of discrimination, Hunter was told that she would "suffer the consequences."  *Id*. ¶ 25.  Ultimately, Hunter was transferred to the At Risk Unit shortly after her supervisor threatened Hunter with "consequences."  *Id*. ¶ 33.  Hunter's assignment to the At Risk Unit was a *de facto* demotion.  *Id*. ¶¶ 30-34.  When Hunter was later transferred back to Oak Hill, she was recommended for termination by one of her harassers.  *Id*. ¶ 35.

In 2004 and 2005, Hunter filed two separate complaints with the D.C. Office of Human Rights ("OHR").  Compl. ¶ 7.  After investigating Hunter's complaints, OHR issued a letter of determination in which it found probable cause that Hunter was subjected to a hostile work environment sexual harassment and was the victim of retaliation.  *Id*.  Several of Hunter's co-workers provided sworn affidavits to OHR corroborating Hunter's assertions that sexual harassment was rampant at Oak Hill.  *Id*. ¶ 40.  Several witnesses described:  (i) "uncontrolled sexual harassment" at Oak Hill from 2003-2005; (ii) the absence of a sexual harassment policy

or training; (iii) rampant fraternization among employees and supervisors; and (iv) verbal threats and harassment among employees.  *Id*.

At no time during her employment at DYRS did Hunter or any other DYRS employee receive training on what constituted sexual harassment or how to report such harassment. Compl. ¶ 45.  For almost two years, Hunter worked for DYRS without the protection of a sexual harassment policy.  *Id*.  In fact, DYRS did not create a sexual harassment policy until ordered to do so by the Mayor on October 20, 2004.  *Id*. ¶ 44.  Moreover, while the policy was implemented at Oak Hill on November 12, 2004, the training of Oak Hill employees concerning that policy was not implemented until late-2006 or early-2007.  *Id*.

On February 15, 2008, Hunter commenced the present action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the District of Columbia Human Rights Act (DCHRA).  *See generally* Complaint.  Defendant District of Columbia (the "District") has answered Hunter's Title VII claims.  *See* Answer (D.E. 7).

On April 7, 2008, the District moved for dismissal of Counts II and IV of Plaintiff's Complaint (the "Motion").[2]  *See* Mot. (D.E. 6).

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that a complaint provide "the defendant fair notice of what the claim is and the grounds upon which it rests" through "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Rahman v. Johanns*, 501 F. Supp. 2d 8, 16 (D.D.C. 2007) (refusing to dismiss discrimination claim) (citing *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964 (2007) (punctuation and additional citations omitted).

---

[2] Pursuant to Rule 7(b) of the Local Rules of the United States District Court for the District of Columbia and Rules 5 and 6(e) of the Federal Rules of Civil Procedure, Hunter's opposition was due on or before April 21, 2008.

In resolving a Rule 12(b)(6) motion, the Court "must treat the complaint's factual allegations — including mixed questions of law and fact — as true and draw all reasonable inferences in the plaintiff's favor." *Kriesch v. Johanns*, 468 F. Supp. 2d 183, 185-86 (D.D.C. 2007) (refusing to dismiss discrimination claim) (citations omitted). In achieving this end, a court "may only consider the facts alleged in the complaint, and any documents attached as exhibits thereto, and matters subject to judicial notice in weighing the merits of the motion." *Shane v. United States*, No. 07-577 (RBW), 2008 WL 101739, at *4 (D.D.C. Jan. 9, 2008) (citation omitted); *Smith v. United States*, 518 F. Supp. 2d 139, 145, 149 (D.D.C. 2007) (Walton, J.) (observing that "a court cannot consider exhibits (other than those attached to the complaint) submitted by the parties or, generally, any other information beyond the four corners of the complaint, on a Rule 12(b)(6) motion"); *accord Bynum v. Equitable Mortgage Group*, No. 99-CV-2266-SBC-JMF, 2005 WL 818619, at *4 (D.D.C. Apr. 7, 2005) (refusing to "consider facts outside the four corners of the complaint" without first converting the motion to dismiss into a motion for summary judgment).

The District — having attached an affidavit in support of its motion to dismiss — has converted its motion to dismiss into a motion for summary judgment. *See Bynum*, 2005 WL 818619, at *4. As the Supreme Court has instructed, summary judgment is appropriate when a party has had an "adequate time for discovery" in order to establish the existence of a fact or element essential to that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 326 (1986) (considering Rule 56 as protecting a party from being "railroaded by a premature motion for summary judgment" before the non-moving party has had the opportunity to make full discovery) (punctuation omitted); *see also Americable Int'l v. Dep't of the Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) ("[S]ummary judgment ordinarily 'is proper only after the plaintiff has

been given adequate time for discovery.'") (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)). Because reasonable discovery is likely to support Hunter's DCHRA claims, the District's *de facto* summary judgment motion should be denied as premature.

## ARGUMENT

## I.    THE DISTRICT HAS ABANDONED ITS EXHAUSTION OF ADMINISTRATIVE REMEDIES ARGUMENT

The District argues that Hunter's DCHRA claims should be dismissed because of her failure "to exhaust her administrative remedies." Mot. at 5-6. Specifically, the District asserts that OHR has not issued any "official document authorizing plaintiff to bring a lawsuit in this matter." *Id.* at 6. On April 14, 2008, the undersigned counsel for Hunter notified counsel for the District that, in fact, OHR had issued an Order dismissing the OHR proceeding. *See* April 2, 2008 Order (attached hereto as Exhibit 1) (dismissing action and providing notice of dismissal to Office of Attorney General); Email from Dana Foster to Eric Glover dated April 14, 2008 (attached hereto as Exhibit 2) (attaching copy of April 2, 2008 Order and requesting that the District withdraw its exhaustion of administrative remedies argument). The next day, counsel for the District agreed to file a notice withdrawing its argument. *See* Email from Eric Glover to Dana Foster dated April 15, 2008 (attached hereto as Exhibit 3). Despite this promise, the District has filed no such notice at the time this opposition was submitted.

Even without this notice of withdrawal, the District's exhaustion argument lacks merit. As this Court previously held in *Bowie v. Gonzalez* (a case cited by the District):

> [T]he District of Columbia's OHR-EEOC worksharing agreement relieved the plaintiff of the burden of exhausting his remedies with the state agency. [As such,] it would be contrary to the policy of cooperation embodied in Title VII (and, the court notes, in the Worksharing Agreement) for the court to accept the defendant's interpretation of the DCHRA as requiring the plaintiff to pursue

> separate administrative remedies for state and federal
> discrimination claims.

433 F. Supp. 2d 24, 34 (D.D.C. 2006) (citations and punctuation omitted). As in *Bowie*, the

District's exhaustion argument fails when, pursuant to the District of Columbia's "OHR-EEOC

"worksharing agreement," Hunter was relieved of any further duty to exhaust her administrative

remedies. *Id.*

## II.    THE DISTRICT'S MOTION TO DISMISS SHOULD BE DENIED

The District's Motion should be denied for several reasons, including: (1) section 12-309

does not apply to Hunter's DCHRA claims; (2) the notice requirements are inapplicable to much

of the relief Hunter seeks; (3) Hunter complied with the statute by providing the District with

actual notice; (4) the District has not met its burden of proving lack of notice under section 12-

309; and (5) the District has waived its right to notice. D.C. Code § 12-309 provides that:

> An action may not be maintained against the District of Columbia
> for unliquidated damages to person or property unless, within six
> months after the injury or damage was sustained, the claimant, his
> agent, or attorney has given notice in writing to the Mayor of the
> District of Columbia of the approximate time, place, cause, and
> circumstances of the injury or damage. A report in writing by the
> Metropolitan Police Department, in regular course of duty, is a
> sufficient notice under this section.

The legislative history of the predecessor statute to D.C. Code § 12-309 makes clear that the

notice provision was adopted to remedy instances where the District had inadequate notice of

personal injury tort actions. While both the DCHRA and section 12-309 have overlapped for 31

years, there appears to be no reported case where a party's DCHRA claim was dismissed for lack

of notice to the District, where the party — like Hunter in this action — filed formal charges

with OHR resulting in an investigation and adjudication.

## A.    D.C. Code § 12-309 Was Never Intended To Apply To DCHRA Claims

The Motion should be denied because section 12-309 was never intended to apply to Hunter's DCHRA claims.  The statutory "predecessor of section 12-309 was enacted in 1933 to deal with cases in which suits were filed against the District before the statute of limitations expired but long after the occurrence of the underlying event," thereby making "it impossible for the District of Columbia to obtain evidence for use in litigation which may result."  *See District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995) (citing H.R. Rep. No. 2010, 72d Cong., 2d Sess. 1 (1933)) (additional citations and punctuation omitted).

The D.C. Court of Appeals stated in *Breen v. District of Columbia* that it was personal injury tort cases against the District that motivated Congress's adoption of the statutory predecessor to D.C. Code § 12-309:

> Congress enacted the statutory predecessor of § 12-309 in 1933, in response to a report issued by the House Committee on the District of Columbia.  . . .  The House Committee itself had responded to a problem revealed by the United States Court of Appeals for the District of Columbia Circuit in *District of Columbia v. Leys*, 62 U.S. App. D.C. 3, 63 F.2d 646 (1932). . . .  The circuit court, on rehearing the case, reaffirmed a judgment in favor of a woman who had obtained a jury verdict for injuries sustained more than three years earlier as a result of a defective sidewalk.  The court, however, expressed concern over the fact that the District was hampered in its defense by the lapse of time between the injury and the suit, during which no claim was made or notice given of the alleged injury.

400 A.2d 1058, 1060 (D.C. 1979) (internal citations and punctuation omitted); *see also Hardy v. District of Columbia*, 616 A.2d 338, 340 (D.C. 1992) (finding notice provision adopted to prevent the spoliation of important evidence, such as "the relevant sidewalk [being] paved over or the meter cover fixed," as well as to allow the District "to correct defective conditions, thus increasing public safety").

The U.S. Court of Appeals for the D.C. Circuit's decision in *District of Columbia v. Leys* — the case cited by the House Committee in support of adopting a notice provision — leaves no doubt that the specific notice provision it sought applied to personal injury tort actions. 63 F.2d 646, 648 (D.C. Cir. 1932) ("Enactment of a requirement that one alleging himself to be injured as a result of a defective highway or sidewalk must make a sworn complaint thereabout to the District government within some short but reasonable period, in default of which any legal action thereupon shall be barred."). The *Leys* Court also noted that their recommended notice provision had already appeared "to be included in a bill recently introduced into the House of Representatives by Mrs. Norton," and was similar to those "found in city charters in Virginia and elsewhere." *Id.* That bill — the predecessor statute to D.C. Code § 12-309 — was enacted less than a year after the *Leys* decision was issued. Over 50 years later, the U.S. Court of Appeals for the D.C. Circuit in *Brown v. United States* affirmed the intent behind the District's adoption of a notice provision, as articulated by the Court in *Leys*:

> The conclusion that Congress was motivated by the municipality's potential liability for everyday torts is strengthened by the fact that a provision was added which allowed written Metropolitan Police reports to fulfill the notice requirement of the Act. Such reports would have been commonly associated with street accidents and similar events.

742 F.2d 1498, 1502 (D.C. Cir. 1984).

The D.C. Court of Appeals decision in *District of Columbia v. Campbell* further confirms that D.C. Code § 12-309 was intended to be limited to personal injury tort actions. 580 A.2d 1295, 1302 (D.C. 1990). In *Campbell*, the District sought to prohibit a general contractor from bringing a contract action against the District for failing to comply with D.C. Code § 12-309. *Id.* Relying on the plain language of the notice provision, the Court of Appeals limited the notice provision to claims "sounding in tort." *Id.* The court found that its reading of the language was

"consistent with the District's greater need to receive notice in order to ascertain the facts in the tort context, where the District will often be unaware of any injury caused by a breach of its duty, than in the contractual context, where—almost by definition—the District is on notice that any breach will result in an injury."  *Id.*

The Court's reasoning in *Campbell* is analogous to Hunter's filing of a complaint with OHR.  In both instances, the District is on immediate notice of potential liability.  Furthermore, the purpose for which the District adopted a notice provision — to provide notice of a potential claim sooner than the statute of limitations period (*see Dunmore*, 662 A.2d at 1359) — is not implicated in DCHRA actions, given that a party provides early notice of a claim through complying with mandatory exhaustion of administrative remedies requirements.  Likewise, it is illogical that a notice provision designed to prevent spoliation of evidence in tort actions with lengthy statutes of limitations would be intended to apply to DCHRA actions that have a one-year statute of limitations.  *See* D.C. Code § 2-1403.16(a).

The limited jurisprudence regarding section 12-309 as it applies to the DCHRA does not support its application in this action.  The DCHRA was enacted in 1977.   While both the DCHRA and section 12-309 have overlapped for 31 years, Judge Kennedy recently identified three unpublished superior court decisions — all within the last three years — that support the application of section 12-309 to the DCHRA.[3]  Current research on this topic identifies no state or federal appellate courts holding that D.C. Code § 12-309 applies to DCHRA claims.  *Byrd*, 2008 WL 678592, at *4 (acknowledging that "the D.C. Court of Appeals has not weighed in on th[e] issue").

---

[3] *See Byrd v. District of Columbia*, No. 06-00522 (HHK) --- F. Supp. 2d ----, 2008 WL 678592, at *4-7 (D.D.C. Mar. 13, 2008) (citing *Cage v. District of Columbia*, No. 05-CA-0091, at *4-7 (D.C. Super. Ct. June 19, 2007); *McFarlane v. New Leaders for New Sch.*, No. 04-CA-8506, at *14 (D.C. Super. Ct. Nov. 10, 2005); *Descunter v. District of Columbia*, No. 04-CA-7214, at *5 (D.C. Super. Ct. Mar. 1, 2005)).

Moreover, in none of the aforementioned unpublished superior court decisions had the plaintiff filed a charge with OHR and proceeded with an OHR investigation, as Hunter has done. This distinction is critical because Hunter's conduct in filing a formal OHR charge and proceeding through an investigation satisfied all of the identified criteria for providing notice to the District. OHR's investigation provided the District a complete and detailed background of Hunter and her allegations. Unlike other statutes to which the notice provision has been found to apply, the DCHRA provides immediate notice of potential claims through its OHR adjudication procedure. *See Doe by Fein v. District of Columbia*, 697 A.2d 23, 25 (D.C. 1997) (reading section 12-309 to apply to the D.C. Prevention of Child Abuse and Neglect Act).

**B.    D.C. Code § 12-309 Only Applies To Claims For Unliquidated Damages**

Even if the Court finds that the notice provision applies to Hunter's DCHRA claims, and finds further that Hunter failed to comply with those notice requirements, section 12-309 cannot dismiss Hunter's claims *in toto*. By its plain language, section 12-309 applies only to actions for "unliquidated damages." D.C. Code § 12-309; *cf. Byrd*, 2008 WL 678592, at *5 ("[T]o the extent plaintiffs seek to recover equitable relief, § 12-309 does not apply to plaintiffs' ability to obtain such relief."); *Chisholm v. District of Columbia*, 533 F. Supp. 2d 175, 179 (D.D.C. 2008) (Walton, J.) (holding that section 12-309 does not apply to "back pay and benefits" and other "easily ascertainable damages"); *Lively v. Cullinane*, 451 F. Supp. 999, 1000 (D.D.C. 1976) ("insofar as plaintiffs seek declaratory and injunctive relief . . . [§] 12-309 is, by its terms, inapplicable").

Hunter seeks, *inter alia*, (i) several forms of declaratory and injunctive relief (Compl. at 14-15); (ii) her reinstatement (*id.* at 15); (iii) back pay and benefits (*id.*); and (iv) attorney's fees (*id.*). Moreover, to the extent Hunter "sustained 'easily ascertainable' damages as a result of her

allegedly wrongful termination, [her] claim is not barred by section 12-309." *Chisholm*, 533 F.

Supp. 2d at 179; *see also Beeton v. District of Columbia*, 779 A.2d 918, 925 (D.C. 2001)

(denying District's motion to dismiss for failure to provide notice under section 12-309 and

holding that plaintiff could obtain any damages that were "easily ascertainable").

To the extent Hunter was required to comply with section 12-309, and has not done so,

the Motion fails as a matter of law because Hunter has sought both liquidated and unliquidated

damages. *See Chisholm*, 533 F. Supp. 2d. at 179.

### C.    The District Had Actual Notice Of Hunter's Discrimination Claims

Because the District received actual notice of Hunter's claims, section 12-309's notice

requirements were satisfied.  D.C. Code § 12-309 "represents an attempt by Congress to provide

**District officials** with 'reasonable notice of [an] accident so that the facts may be ascertained,

and if possible, the claim adjusted[.]" *Shaw v. District of Columbia*, No. 05-1284 (CKK), 2006

WL 1274765, at *5 (D.D.C. May 8, 2006) (quoting H.R. Rep. No. 2010 at 2, 72nd Cong., 2d

Sess. 1 (1933)) (emphasis added).  The notice provision was designed "to (1) protect the District

of Columbia against unreasonable claims and (2) to give reasonable notice to the District of

Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and

meritless claims resisted." *Sperling ex rel. Estate of Oxlaj-Gonzales v. Washington Metro. Area*

*Transit Auth.*, --- F. Supp. 2d ----, No. 07-557 (CKK), 2008 WL 921853, at *4 (D.D.C. April 8,

2008) (citation and punctuation omitted); *see also Pinkney v. District of Columbia*, 439 F. Supp.

519, 525 n.6 (D.D.C. 1977) (stating that the "aims of section 12-309 are to encourage prompt

settlements and permit early investigation of potential claims while the facts are fresh") (citations

omitted); *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978) (permitting "deserving

claims adjusted and meritless claims resisted"); *Hurd v. District of Columbia*, 106 A.2d 702,

704-05 (D.C. 1954) ("[T]he whole tenor of the act and its legislative history indicates an

intention on the part of Congress to impose only reasonable requirements upon claimants, and to restrict their right to bring actions of this nature against the District only insofar as it was necessary to protect the District.").

Notice under section 12-309 is "sufficient 'if it recites facts from which it could be anticipated that a claim against the District of Columbia might arise.'" *Shaw*, 2006 WL 1274765, at *6 (quoting *Pitts*, 391 A.2d at 809); *see also Dixon v. District of Columbia*, 168 A.2d 905, 907 (D.C. 1961) (finding that notice is sufficient if the District, "in the exercise of due diligence, should have been able to locate the offending defect"). "[W]hen 'faced with a § 12-309 dispute, courts 'implicitly follow a case-by-case approach in an area where no 'bright line' tests are applicable.'" *Shaw*, 2006 WL 1274765, at *6 (quoting *Pitts*, 391 A.2d at 808). While courts have found that the provision should be "construed narrowly against claimants," the D.C. Court of Appeals has, nevertheless, "instructed that in close cases, with respect to the content of notice, courts should resolve doubts in favor of finding compliance with the statute." *Sperling*, 2008 WL 921853, at *4 (quoting *Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995)) (internal punctuation omitted); *cf. Hurd*, 106 A.2d at 704-05 (holding that to bar a suit "despite the fact that the statutory purpose was satisfied and the District was admittedly not prejudiced, would be to extend the language of the statute far beyond its clear purpose").

This Court's decision in *Pinkney v. District of Columbia* is instructive on the issue of whether the District receives notice of a claim through a party's exhaustion of administrative remedies. In *Pinkney*, the plaintiff challenged his dismissal as an employee of Federal City College, a public institution operated by the District of Columbia. 439 F. Supp. at 522. The District moved to dismiss the breach of contract and wrongful termination claims for failing to comply with D.C. Code § 12-309. Prior to bringing his federal court action, plaintiff executed

his right to appeal the adverse employment action pursuant to a provision in the D.C. Board of

Higher Education Resolution No. 70-1. *Id.* at 523 n.2. This Court held that, as a matter of law,

Plaintiff's claims were not barred by the notice requirement because the six-month period did not

accrue until after Plaintiff had exhausted his administrative remedies. *Id.* at 524. Specifically,

this Court held:

> Where a claimant is required to pursue his administrative remedies
> under the exhaustion doctrine, he necessarily will alert the
> government to the existence of a potentially litigable dispute.
> Furthermore, he typically will provide government officials with a
> detailed explanation of his grievance inasmuch as administrative
> processing requires full disclosure of the facts and circumstances
> underlying the claim, and not, as is the case with § 309, bare notice
> of it. In this way prompt resort to the administrative process in no
> way offends the aims of § 309. Far from doing that, pursuit of
> administrative remedies generously serves the purposes behind
> § 309.

*Id.* at 525. As if addressing the arguments raised by the District in this case, the court stated that

the facts of the case made clear that "from the very outset appropriate authorities of the District

of Columbia government were alerted to the circumstances behind [Plaintiff]'s dispute with the

city." *Id.* at 526; *cf. Foster v. Gonzales*, 516 F. Supp. 2d 17, 25-26 (D.D.C. June 28, 2007)

(observing: "If anything, *Pinkney* stands for the unremarkable proposition that one purpose of

the exhaustion of administrative remedies is to provide the government with early notice of 'a

potential litigable dispute.'") (quoting *Pinkney*, 439 F. Supp. at 524).

This Court's April 7, 2008 decision in *Sperling ex rel. Estate of Oxlaj-Gonzales v.*

*Washington Metropolitan Area Transit Authority* is likewise instructive on actual notice

trumping the need for uniform compliance with D.C. Code § 12-309. In *Sperling*, an estate

representative brought an action against the transit authority for damages in connection with a

fatal collision between a pedestrian and a transit authority bus. 2008 WL 921853, at *1. The

parties disputed whether the District received adequate notice of Plaintiff's claim. *Id.* at *3. The Court found that the police report at issue was insufficient notice when the report didn't "suggest that the District would be the likely target of a claim by the Plaintiff[.]" *Id.* at *4. The Court, however, found that the combination of the police report plus a letter from the Washington Metropolitan Area Transit Authority was sufficient to provide notice to the District under section 12-309. *Id.* at *6. In denying the District's motion to dismiss, this Court relied on the D.C. Circuit's decision in *Rieser v. District of Columbia*, 563 F.2d 462, 477 (D.C. Cir. 1977), for the proposition that "letters sent to the District by persons other than the claimant, his attorney, or agent may explicate a Police Report and provide adequate notice, even if the letters themselves are not legally cognizable forms of notice under Section 12-309." *Sperling*, 2008 WL 921853, at *6.

This decision is consistent with the decision in *Hirshfeld v. District of Columbia*, where the D.C. Circuit found notice to another agency was sufficient even when not made in connection with a police report. 254 F.2d 774, 776 (D.C. Cir. 1958). Similar to this Court's decision in *Pinkney*, the D.C. Circuit relied heavily on the fact that Corporation Counsel had actual notice of the claim. *Id.* at 775-76; *cf. Smith v. District of Columbia*, 463 F.2d 962, 964-65 (D.C. Cir. 1972) (stating: "This Court seeks, as it has in the past, to effectuate the purpose of [section 12-309], that is, to give the District timely information concerning a claim against it so that it may adequately prepare its defense," then relying on *Hirshfeld* to hold that notice from one other than claimant is sufficient when, "[t]o hold otherwise would be giving effect to an overly strict and technical reading of the statute while ignoring its legislative history and the purpose of its enactment.").

To the extent section 12-309 applies to Hunter's DCHRA claims, strict compliance with the notice provision is not required (*Hirshfeld*, 254 F.2d at 775-76; *Sperling*, 2008 WL 921853, at *6), especially where, as here, OHR's two discrimination charges provided extensive facts and information "from which it could be anticipated that a claim against the District of Columbia might arise." *Shaw*, 2006 WL 1274765, at *6; *cf. Hurd*, 106 A.2d at 704-05.

### 1.    OHR's Charge Questionnaire Provided The District Detailed Notice Regarding Hunter's DCHRA Claims

Hunter filed two charges of discrimination with OHR.  Compl. ¶ 7.  In doing so, Hunter was required to complete a detailed questionnaire that identified:  (i) all of her personal information including date of birth and social security number; (ii) the name and address of the agency in which she was employed; (iii) the specific bases for her charge of discrimination; (iv) the EEO counselor she initially contacted regarding the discrimination; (v) all witnesses who supported Hunter's claim; and (vi) a detailed description of all events underlying her charge of discrimination.  *See* Intake Questionnaire, http://ohr.dc.gov/ohr/cwp/view,a,3,q,637927.asp, last visited April 21, 2008 (attached hereto as Exhibit 4).  With the information provided in this form, OHR "conduct[ed] an early investigation of the facts and circumstances surrounding [Hunter's] claims" (*Pinkney*, 439 F. Supp. at 525 n.6), including conducting witness interviews and requesting rebuttal evidence from DYRS (through the D.C. Attorney General's Office) that culminated in a probable cause determination of discrimination and retaliation.

### 2.    OHR's Charges Of Discrimination Are Akin To Police Reports

Courts have repeatedly held that the police-report exception to D.C. Code § 12-309 was "designed to provide for instances in which the District has actual notice." *Rieser*, 563 F.2d at 476; *accord Mazloum v. District of Columbia Metro. Police Dep't*, 522 F. Supp. 2d 24, 49 (D.D.C. 2007) (finding a police report to be "an alternative form of notice added to take care of

those instances in which *actual notice* is had by the District of Columbia" (citations omitted) (emphasis in original)).   A police report provides acceptable notice when it "contains 'information as to the time, place, cause and circumstances of injury or damage with at least the same degree of specificity required of a written notice.'"   *Mazloum*, 522 F. Supp. 2d at 49 (quoting *Allen v. District of Columbia*, 533 A.2d 1259, 1262 (D.C. 1987)); *accord Pitts*, 391 A.2d at 808 (requiring "approximate time, place, cause and circumstances of the injury or damage").

The charges Hunter filed with OHR provided factual information well-beyond the level of detail and specificity required in a police report.  *See* D.C. Code § 2-1403.04 (requiring "the name and address of the person alleged to have committed the violation . . . and . . . the substance thereof, and such other information as may be required by the Office"); *supra* § II(C)(1) (discussing Employment Intake Questionnaire as requiring:  (i) plaintiff's personal information; (ii) employer; (iii) specific charge of discrimination; (iv) prior EEO contact; (v) identification of relevant witnesses; and (vi) detailed basis for claim of discrimination); *cf. Allen*, 533 A.2d at 1262 (finding notice sufficient when it "provid[ed] the District with the details necessary for it to go directly to the governmental departments involved in the injuring event and receive additional information about the basis for the claim.").

Another critical feature of a police report that makes it sufficient notice to the Mayor under section 12-309 is that a police report is investigated by police officers who ultimately make a determination as to its validity in the form of a probable cause determination.   As explained above, OHR's primary purpose is to investigate discrimination claims.  *See* D.C. Code § 2-1403.01.  After thoroughly investigating each complaint, including collecting evidence and

interviewing witnesses, OHR makes essentially the same probable cause determination that police officers undertake. *Id.* § 2-1404.02.

The District now seeks to strike Hunter's DCHRA claims — not because of a lack of notice — but rather because the Mayor did not receive a letter. Mot. at 5. Hunter, however, is not even required to send "notice to the Mayor." *See* 47 DCR 9533 (2000) (delegating the Mayor's duty to receive notice pursuant to D.C. Code § 12-309 to Corporation Counsel);[4] 51 DCR 1455 (2004) (delegating the Mayor's duty to receive notice pursuant to D.C. Code § 12-309 to the Office of Risk Management); Mot. Ex. A ¶ 4 (identifying a "search of the records placed in the Risk Management system").

### 3.    OHR's Investigation Provided Notice To The Mayor

OHR was "established, in the Executive Branch of the government of the District of Columbia." D.C. Code § 2-1411.01(a). The OHR Director "serve[s] at the pleasure of the Mayor." D.C. Code § 1-610.51(b). The D.C. Code provides that the activities of OHR "shall be considered investigations or examinations of municipal matters." D.C. Code § 2-1403.01(a). The Mayor is responsible for being informed of OHR's activities: "The Mayor shall annually report to the Council as to the progress with regard to the enforcement of [the DCHRA], and any other activity related to the field of human rights deemed valuable to the Council in the pursuit of its responsibilities." D.C. Code. § 2-1403.01(g).

As the District points out, a District of Columbia employee is required to exhaust his or her administrative remedies for claims against the District under the DCHRA. Mot. at 5-6 (citing *Bowie*, 433 F. Supp. 2d at 34). Filing a complaint with OHR is one avenue through which

---

[4] In January 2004, notice was required to be provided to Corporation Counsel — not the Mayor. *See* 47 DCR 9533. If Hunter had filed her charge only months earlier with OHR, and then engaged in an adjudication of that charge with Corporation Counsel, the District's present motion to dismiss would be moot for yet another reason. Such unintended technicalities are contrary to the purposes for which the DCHRA and tort notice provisions were enacted.

this is accomplished.  *See* D.C. Code § 2-1403.03(b) ("A person claiming to be aggrieved by an unlawful discriminatory practice on the part of District government agencies, officials, or employees may elect to file an administrative complaint under the rules of procedure established by the Mayor").  In fact, the D.C. Code provides:

> The Mayor shall establish rules of procedure for the investigation, conciliation, and hearing of administrative complaints filed against District government agencies, officials and employees alleging violations of this chapter.  ***The final administrative determination in such matters shall be made by the Mayor or his designee***.

D.C. Code § 2-1403.03(a) (emphasis added).

There is also evidence that the OHR Director is required to provide the Mayor with weekly reports regarding OHR's activities.  *See Holman v. Williams*, 436 F. Supp. 2d 68, 72 (D.D.C. 2006) (indicating that the OHR Director provided the Mayor with a "confidential weekly report").[5]

---

[5] Hunter acknowledges that the citation to Holman's complaint regarding a "confidential weekly report" in the decision cannot support a finding that the Mayor had actual notice of Hunter's DCHRA claims. This information, however, does imply that communications occurred on a regular basis between the OHR Director and the Mayor.  As noted above, the District's argument regarding section 12-309 is an affirmative defense, in support of which it has attached an affidavit from someone in another District agency.  Affirmative defenses are rarely decided on a motion to dismiss, before any discovery has taken place.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007) (refusing to require plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses).  Moreover, Hunter is not required to plead around potential affirmative defenses.  *See Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) ("Complaints need not anticipate defenses"); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1276 (3d ed. 2004, supp. 2008) ("technically, [pleading in anticipation of affirmative defenses] is improper pleading because these allegations are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading.").  If the Court wishes to consider the District's affirmative defense at this stage of the proceeding, it should convert the District's motion into one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and allow Hunter to take discovery.  *Bynum*, 2005 WL 818619, at *4.  In particular, Hunter should be allowed to take discovery of OHR to investigate the extent that the Mayor had actual notice of Hunter's claims within the six-month period proscribed by D.C. Code § 12-309.

D.    **The District Has Waived Its Failure To Provide Notice Argument By Litigating Hunter's Claims For Nearly Four Years**

Because the District has been litigating Hunter's DCHRA claims for nearly four years, it has waived its right to notice under section 12-309.  The notice requirement in D.C. Code § 12-309 is not jurisdictional — "it is simply a penalty for noncompliance."  *Sanders v. District of Columbia*, No. 97-2938 (PLF), 2002 WL 648965, at *2 (D.D.C. Apr. 15, 2002) (internal quotation marks omitted).  Because it is not jurisdictional, it is waivable. *Id.*; *see also Brown v. United States*, 742 F.2d 1498, 1506 (D.C. Cir. 1984) ("if [Section 12-309] is not complied with, and there are no grounds for waiver, it bars an action"); *F.W. Woolworth Co. v. Stoddard*, 156 A.2d 229, 231 (D.C. 1959) ("In none of the several decisions construing the statute has it ever been held that giving of the notice must be alleged and proved.  We rule, as did the trial court, that this was a matter of affirmative defense.").

Hunter filed her first claim in August 2004.  Compl. ¶ 7, Ex. 1 at 2.  In the nearly four years of subsequent administrative proceedings, the District litigated the same claims Hunter brings in this Complaint.  Specifically, the District twice responded to Hunter's claims by submitting sworn affidavits and other documents (*Id.* at Ex. 1 at 2, 4-8, 10-11); (2) filed a motion to vacate a probable cause determination and reopen the investigation (*Id.* at Ex. 1 at 2); and (3) attempted to pursue conciliation (D.E. 4 ¶ 3).  Moreover, it is clear that the Office of the Attorney General for the District of Columbia was actively participating in the proceedings.  *See, e.g.*, Compl. Ex. 1 at 1 n.1 (citing a March 20, 2007 correspondence from the Office of the Attorney General for the District of Columbia); *id.* at Ex. 1 at 22 (copying Andrea Comentale, Esq., Acting Chief, Personnel and Employment, Office of the Attorney General for the District of Columbia).  In fact, the District admits that the litigation Hunter began in 2004 continues with this action.  *See* Def.'s Mot. to Enlarge Time ¶ 4 (D.E. 4) ("The additional time will allow the

parties to proceed with conciliation with the hope of resolving the issues set forth in the Complaint."); *cf. Pinkney*, 439 F. Supp. at 526 (finding that the District of Columbia was "alerted to the circumstances behind [Plaintiff]'s dispute with the city . . . [when] Corporation Counsel's office remained actively involved in the matter to keep abreast of developments[.]")

In nearly four years, the District has never raised as a defense the failure to provide notice under D.C. Code § 12-309. The District, therefore, waived this argument and cannot properly raise it at this stage of the litigation. *See Sanders*, 2002 WL 648965, at *3 (finding waiver after the District "actively" engaged in the litigation "for over four years without raising the failure to provide notice").

## CONCLUSION

For all of these reasons, the District's Motion to Dismiss should be denied.


Dated:  April 21, 2008                            Respectfully submitted,

                                                  **WHITE & CASE** LLP

                                                  /s/ Dana E. Foster
                                                  Dana E. Foster (D.C. Bar No. 489007)
                                                  Christopher Macchiaroli (D.C. Bar No. 491825)
                                                  701 Thirteenth Street, N.W.
                                                  Washington, DC  20005
                                                  Tel.:  (202) 626-3600
                                                  Fax:  (202) 639-9355

                                                  *Counsel for Plaintiff Zina D. Hunter*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2008, a copy of the foregoing "Plaintiff Zina D. Hunter's Memorandum In Opposition To Defendant District Of Columbia's Motion To Dismiss" was served upon the following party via the Electronic Case Filing ("ECF") system:

> Eric S. Glover, Esq.
> Assistant Attorney General
> Office of the Attorney General
> 441 Fourth Street, N.W.; Suite 6N013
> Washington, D.C. 20001
>
> *Counsel for Defendant District of Columbia*

<u>/s/ Dana E. Foster</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ZINA D. HUNTER**
2456 Elvans Road, S.E.
Washington, DC  20020,

**Plaintiff,**

**v.**

**DISTRICT OF COLUMBIA**
1350 Pennsylvania Avenue, N.W.
Washington, DC  20004,

**Defendant.**

**Civil Action No. 1:08-cv-256-RBW**
**Judge: Reggie B. Walton**

## ORDER

Having reviewed and considered the District of Columbia's Motion to Dismiss Counts II and IV of Plaintiff's Complaint (D.E. 6), and Plaintiff Zina D. Hunter's Memorandum In Opposition To Defendant District Of Columbia's Motion To Dismiss, it is hereby

ORDERED, that the District of Columbia's Motion to Dismiss is **DENIED**.

SO ORDERED this _____ day of _____, 2008

_____
REGGIE B. WALTON
United States District Court

# EXHIBIT 1

## DISTRICT OF COLUMBIA
## OFFICE OF HUMAN RIGHTS

<u>IN THE MATTER OF</u>:

| | |
|---|---|
| Zina Hunter | ) |
| *Complainant* | ) |
| | ) |
| v. | ) |
| | ) |
| District of Columbia Department of Youth | ) |
| Rehabilitation Services | ) |
| | ) |
| *Respondent* | ) |
| | ) |

Docket No: 04-410
EEOC No: 10CA400331

## <u>ORDER</u>

The Office of Human Rights ("the Office") has completed its review of the **Complainant Zina D. Hunter's Motion for an Order Confirming that the District of Columbia Office of Human Rights Has Terminated its Consideration of Complainant's Hostile Work Environment Sexual Harassment and Retaliation Claims.** Pursuant to the District of Columbia Human Rights Act, DC. Code δ 2-1401.01 *et. seq.*, (2002 Ed.) The OHR hereby issues its Findings of Fact and Law and Order.

## <u>FINDINGS OF FACT AND LAW</u>

### Procedural History

On August 30, 2004, Complainant filed a complaint alleging sexual harassment and retaliation. The OHR issued a Letter of Determination (LOD) on August 29, 2006. On May 8, 2007, the OHR vacated the LOD and reopened the investigation. The Office noted that because of a procedural error, the correct parties did not participate in the claim. On January 29, 2008, the OHR issued its Second Letter of Determination (LOD) and found probable cause that Complainant was subjected to a hostile work environment on the basis of sex and retaliation.

On March 26, 2008, Respondent filed this Motion for an Order Confirming that the District of Columbia Office of Human Rights Has Terminated its Consideration of Complainant's Hostile Work Environment Sexual Harassment and Retaliation Claims. It attaches its Complaint filed in the United States Court for the District of Columbia. (Civil Action Number 1:08-cv-256-RBW) The complaint alleges the same allegations and facts in the OHR complaint. D.C. Code § 2-1403.16 states in pertinent part:

*Hunter v DYRS*
*Docket No: 04-410*
*Page 2 of 3*

(a) Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder; provided, that where the Office has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed. **No person who maintains, in a court of competent jurisdiction, any action based upon an act which would be an unlawful discriminatory practice under this chapter may file the same complaint with the Office.** A private cause **of action** pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof, except that the limitation shall be within 2 years of the unlawful discriminatory act, or the discovery thereof, for complaints of unlawful discrimination in real estate transactions brought pursuant to this chapter or the FHA. The timely filing of a complaint with the Office, or under the administrative procedures established by the Mayor pursuant to §2-1403.03 shall toll the running of the statute of limitations while the complaint is pending. (*emphasis added*)

Pursuant to this provision prohibiting maintaining simultaneous complaints asserting the same allegations, the above cited action must be Administratively Dismissed.

## CONCLUSION

The OHR hereby **ADMINISTRATIVELY DISMISSES**, the matter of *Zina Hunter v. Department of Rehabilitation Services*, Docket Number: 04-410, EEOC No: 10CA400331. This order terminates the Office's consideration of Complainant's claims.

*IT IS SO ORDERED.*

_____                    4/4/08
Gustavo F. Velasquez                         Date
Director

Copies to:        Andrea G. Comentale, Esq.
                  Chief, Personnel and Employment Section
                  Office of the Attorney General for the District of Columbia
                  One Judiciary Square
                  441 4th Street, NW-Suite 1060 North
                  Washington, DC 20001
                  (*with Attachment*)

2

*Hunter v DYRS*
*Docket No: 04-410*
*Page 3 of 3*

Dana E. Foster, Esq.
Christopher Macchiaroli, Esq.
White & Case, LLP
701 Thirteenth Street, NW
Washington, DC 20005
(Without Attachment)

# EXHIBIT 2

## Foster, Dana Evans

| | |
|---|---|
| **From:** | Foster, Dana Evans |
| **Sent:** | Monday, April 14, 2008 8:48 AM |
| **To:** | eric.glover@dc.gov |
| **Cc:** | zuberi.williams@dc.gov; Macchiaroli, Christopher |
| **Subject:** | Hunter v. District of Columbia, No. 1:08-cv-00256 (RBW) (D.D.C.) |
| **Attachments:** | OHR Order.pdf |

Mr. Glover,

Attached please find a copy of an Order from the District of Columbia Office of Human
Rights confirming the dismissal of the matter of *Zina Hunter v. District of Columbia Department of
Youth Rehabilitation Services*, No. 04-410, EEOC No. 10CA400331. It is clear from this Order that
none of Ms. Hunter's claims are currently pending before the D.C. Office of Human Rights. Based on
this, I ask that the District of Columbia withdraw its argument that dismissal is appropriate for Ms.
Hunter's D.C. Human Rights Act claims because of a pending OHR matter (Mem. at 5-6).

Sincerely,

Dana E. Foster
Associate
Commercial Litigation Practice
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: + (202) 637-6181
            + (646) 246-3692 (c)
Fax:     + (202) 639-9355
defoster@whitecase.com

# EXHIBIT 3

## Foster, Dana Evans

**From:**   Glover, Eric (OAG) [eric.glover@dc.gov]
**Sent:**   Tuesday, April 15, 2008 10:48 AM
**To:**     Foster, Dana Evans
**Subject:** RE: Hunter v. District of Columbia, No. 1:08-cv-00256 (RBW) ( D.D.C.)

Mr. Foster,

Please be advised that the District will be filing a notice to withdrawal its argument regarding your client's failure to exhaust her administrative remedies.

**Eric S. Glover**
Assistant Attorney General
General Litigation Division, Section IV
Office of the Attorney General for the District of Columbia
441 Fourth Street, N.W. - Suite 600 North
Washington, D.C. 20001
Office: (202) 442-9754
Fax:  (202) 727-3625
eric.glover@dc.gov

**From:** Foster, Dana Evans [mailto:defoster@washdc.whitecase.com]
**Sent:** Monday, April 14, 2008 8:48 AM
**To:** Glover, Eric (OAG)
**Cc:** Williams, Zuberi (OAG); Macchiaroli, Christopher
**Subject:** Hunter v. District of Columbia, No. 1:08-cv-00256 (RBW) ( D.D.C.)

Mr. Glover,

Attached please find a copy of an Order from the District of Columbia Office of Human Rights confirming the dismissal of the matter of *Zina Hunter v. District of Columbia Department of Youth Rehabilitation Services*, No. 04-410, EEOC No. 10CA400331.  It is clear from this Order that none of Ms. Hunter's claims are currently pending before the D.C. Office of Human Rights.  Based on this, I ask that the District of Columbia withdraw its argument that dismissal is appropriate for Ms. Hunter's D.C. Human Rights Act claims because of a pending OHR matter (Mem. at 5-6).

Sincerely,

Dana E. Foster
Associate
Commercial Litigation Practice
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: + (202) 637-6181
          + (646) 246-3692 (c)
Fax:   + (202) 639-9355
defoster@whitecase.com

===============================================================================

4/20/2008

PLEASE NOTE: The information contained in this message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive it. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur
with transmission, please contact sender or call (202) 626-3600. Thank you.
===============================================================================

4/20/2008

# EXHIBIT 4



**DISTRICT OF COLUMBIA GOVERNMENT**
**OFFICE OF HUMAN RIGHTS**

**EMPLOYMENT INTAKE QUESTIONNAIRE**

COMPLETING THIS INTAKE QUESTIONNAIRE DOES NOT CONSTITUTE THE FILING OF A DISCRIMINATION CHARGE.

Disclaimer: Information required therein will assist the DC Office of Human Rights (OHR) to determine whether the allegations of discrimination are sufficient to the filing of a complaint, as defined by the D.C. Human Rights Act of 1977, as amended, Title VII of the Civil Rights Act of 1964, Title I of the American with Disabilities Act of 1990 (ADA) and the Age Discrimination in Employment Act (ADEA), among other laws and regulations. Please complete the following form in its entirety and to the best of your knowledge.  This form is subject to review and acceptance by the OHR.

*Notice of Non-Discrimination*

In accordance with the D.C. Human Rights Act of 1977, as amended, D.C. Official Code Section §§2-1401.01 et  seq.,(Act) the District of Columbia does not discriminate on the basis of actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, matriculation, political affiliation, genetic information, disability, source of income, victim of an intrafamily offense, or place of residence or business. Sexual harassment is a form of sex discrimination which is prohibited by the Act. In addition, harassment based on any of the above protected categories is prohibited by the Act. Discrimination in violation of the Act will not be tolerated.  Violators will be subject to disciplinary action.

**Asterisks ( * ) are required fields.**

**1. COMPLAINANT**

*Name: _____     *Date: _____

*Street Address: _____

*City: _____     *State: Select One _____     *Zip: _____

        (Format: NNN-NNN-NNNN)
*Telephone (H): _____     *Telephone (W): _____

*Email: _____     *Date of Birth: _____

*Race: _____     *Sex: ◯ Male ◯ Female     *Social Security Number: _____

*The Primary Language Spoken in your household: ◯ Spanish ◯ Amharic ◯ Chinese ◯ Vietnamese ◯ Korean ◯ Other

**CONTACT PERSON IF YOU CANNOT BE REACHED:**

*Name: _____

*Street Address: _____

*City: _____     *State: Select One _____     *Zip: _____

        (Format: NNN-NNN-NNNN)                              (Format: NNN-NNN-NNNN)
*Telephone (H): _____     *Telephone (W): _____

*Email: _____

**IF REPRESENTED BY COUNSEL, PLEASE PROVIDE THE FOLLOWING:**

                                              (Format: NNN-NNN-NNNN)
Name: _____     Telephone/Fax: _____

Street Address: _____

Please note: If you are represented by counsel or retain counsel prior to your scheduled Intake interview, the counsel must either (1) be present with you for the duration of your Intake interview, or (2) withdraw his/her appearance from the interview by submitting a letter to the Office indicating that the interview may take place without his/her representation.

**2. RESPONDENT**

*Name of company or organization: _____

*Name and Title of principal officer (i.e. President, Owner, Human Resources Manager):

_____

*Nature of Business: _____

*Street Address: _____

*City: _____     *State: Select One _____     *Zip: _____

        (Format: NNN-NNN-NNNN)                              (Format: NNN-NNN-NNNN)
*Telephone (H): _____     *Fax: _____

### 3. BASIS OF COMPLAINT
The basis is the reason you were treated differently than others outside of your protected class.

*Do you feel you were discriminated against because of your:
(Please check appropriate box and provide detail, if necessary.)

☐ Race _____

☐ Sex _____

☐ Age _____

☐ National Origin _____

☐ Religion _____

☐ Disability _____

☐ Marital Status ☐ Personal Appearance ☐ Genetic Information ☐ Sexual Orientation

☐ Political Affiliation ☐ Family Responsibilities ☐ Gender Identity or expression

### *4. JURISDICTION

☐ Alleged violation occurred in the District of Columbia.

☐ Alleged violation occurred 365 days or less (6 months or less for D.C. Government Employees).

☐ At least 1 employee (More than 15 employees to cross file with EEOC).

☐ You have not commenced any other action, civil, criminal, or administrative in any other forum based on the same unlawful discriminatory practice described herein.

### 5. ISSUES
*What action was taken that made you feel you were treated differently?

☐ Family Medical Leave  ☐ Promotion  ☐ Transfer  ☐ Demotion

☐ Discharge  ☐ Retaliation  ☐ Sexual Harassment  ☐ Hostile Work Environment

☐ Failure to Hire  ☐ Equal Pay  ☐ Terms and Conditions  ☐ Failure to Accommodate

☐ Discipline  ☐ Constructive Discharge

Other: _____

### 6. DISTRICT OF COLUMBIA GOVERNMENT EMPLOYEES OR APPLICANTS

*Please note: Pursuant to §105 of DCMR Title IV, all District Government employees must first consult an agency EEO counselor within 180 days of the alleged discriminatory act prior to filing with the Office of Human Rights, unless the District Government employee is alleging unlawful discrimination based on sexual harassment. The Office of Human Rights cannot process a complaint from a current or former District Government employee unless (1) the employee has received an exit letter from his/her agency EEO Counselor; (2) twenty-one days have passed since the matter was called to the attention of the agency's EEO counselor and no exit letter has been written; or (3) the employee is alleging unlawful discrimination based on sexual harassment. You have filed an informal complaint with an agency assigned EEO Officer/ Counselor.

*Counselor's Name: _____

*Counselor's Agency: _____

*Counselor's Telephone Number: [_____]  (Format: NNN–NNN–NNNN)  Date Filed: [_____]

*Date of Exit Letter: [_____]

## 7. EMPLOYMENT
Time of Hire, Evaluations, Discipline, Termination

*Date of Hire: |                          *Title: |

*Salary at time of hire: |                    *Date of Last Performance Evaluation: |

*Supervisor/Manager who performed the Evaluation: |

*Last Performance Evaluation Rating: ◉ Excellent    Good    Fair    Poor

*Alleged adverse actions taken against you (i.e., written reprimand, suspension, denial of promotion) and the date the action was taken:

Action: |                                    Date: |

Action: |                                    Date: |

◉ **Current  or**  ○ **Final** position held with Respondent: |

Salary: |

*What reason did Respondent give for your ◉ **termination or**          ○ **denial of promotion:**

☐ Work Performance      ☐ Attendance      ☐ Insubordination          ☐ Gross Misconduct

*Date of Termination/Denial of Promotion: |

## 8. D.C. FAMILY AND MEDICAL LEAVE ACT
(Only complete section if your complaint deals with FMLA.)

*Have you been employed with this company for at least one (1) year and have worked at least one thousand (1,000) hours?
◉ **Yes**      No

*Date(s) you requested: |

*Reason you requested: |

*Person who denied your request: |

*Title: |

*Others who have requested leave:
|

*How are these persons different from you:
|

*Have you tried to resolve this matter with Respondent?  If so, please describe with whom you spoke and their response:

Name/Title: |

|

## 9. WITNESSES
*List whom you feel can corroborate your experience and provide evidence in your support. FMLA.)

Name:

Title:                                    Telephone:

What s/he can attest to::

Name:

Title:                                    Telephone:

What s/he can attest to::

Name:

Title:                                    Telephone:

What s/he can attest to::

Name:

Title:                                    Telephone:

What s/he can attest to::

**\*10. YOUR COMPLAINT**

Describe in detail the incident(s) that led you to file a complaint of discrimination. Please list dates as well as the name(s) of the person(s) who discriminated against you in denying employment, promotion, training, goods, services, educational services, etc. If this is a disability-based complaint, please specify whether an accommodation was requested; the person the request was submitted to and the date Respondent was notified of your disability. support. FMLA.)

The D.C. Office of Human Rights provides mediation. Mediation is a process in which an acceptable, impartial, third party attempts to assist disputing parties toward a mutual settlement. A mediator is assigned to each case as a neutral third party to assist disputants in reaching a mutually acceptable resolution to their problem(s). The mediation process is mandatory and disputing parties design solutions to their own problems.

**Please Note:** In the event mediation is unsuccessful, your complaint will move forward to full investigation. If the investigation reveals that your complaint should be dismissed, you will receive a letter explaining the reasons for dismissal. Applicable regulations also require the OHR to send a copy of the dismissal notice to the Respondent.

SUBMITTING THIS INTAKE QUESTIONNAIRE DOES NOT CONSTITUTE THE FILING OF A CHARGE. The receipt of this complaint form by the Office of Human Rights will act as the filing date for statute of limitations purposes. But, the Charge of Discrimination is the formal document, on which the investigation and determination will be based.

\*Complainant's Signature:                                    \*Date